# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 9, 2025

Lyle W. Cayce
Clerk

_____

No. 24-60115

_____

Velma Smith, *individually and on behalf of all others similarly situated*,

> *Plaintiff—Appellant*,

*versus*

Aegon USA, L.L.C., *doing business as* Transamerica; Transamerica Life Insurance Company; Aegon Direct Marketing Services, Incorporated, *formerly known as* Aegon Special Marketing Services, Incorporated; Penney OpCo, L.L.C., *doing business as* JCPenney, *formerly known as* JC Penney, Incorporated; TCS e-Serve International Limited; Tata Consultancy Services Limited; Tata American International Corporation,

> *Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-357

_____

Before Dennis, Haynes, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60115

This nationwide putative class action arises from the delay of payment for an insurance claim that was initially submitted under an incorrect policy number but was ultimately paid. Velma Smith (Smith) appeals the district court's dismissal of her claims, prior to class certification, for lack of personal jurisdiction and failure to state a claim. We AFFIRM.

I

A

In 2013, JCPenney offered its credit card holders, including Smith, an opportunity to buy a group hospital indemnity policy issued by Transamerica Life Insurance Company (Transamerica). Smith purchased the policy and became an insured by paying the premiums, which were charged to her JCPenney credit card on a monthly basis. Her JCPenney credit card statements listed the group policy number as "74A04Q2649." Her insurance contract with Transamerica, however, listed that same number as her individual certificate number; it listed "25451 GC939" as the group policy number.

The insurance contract required Smith to provide Transamerica written notice within thirty days of any claim for a loss covered under the policy. The required notice had to include the insured's name and certificate number and be sent to Transamerica's post office box in Plano, Texas. The contract also required Transamerica to pay the claim within forty-five days of receipt of the notice.

On May 26, 2021, Smith was involved in a car accident; she was taken by ambulance to a hospital, where she stayed overnight. She subsequently attempted to file an insurance claim on Transamerica's website, but when she entered "74A04Q2649" as her group policy number, no policy was found. Smith called Transamerica and provided the same information, and again, no policy was found. Smith next sent a letter to Transamerica's claims

department in Cedar Rapids, Iowa, informing it about her hospitalization and requesting a copy of her policy, but she never received a reply. Smith then sent a letter to Transamerica's division counsel, also in Cedar Rapids, Iowa, discussing her prior efforts to reach Transamerica and requesting assistance with filing a claim. She never received a reply.

On October 25, 2021, Smith filed a complaint against Transamerica with the Mississippi Department of Insurance. A representative from Tata Consultancy Services e-Serve International Limited (e-Serve), "a Third-Party Administrator that provides administrative and claims processing services to Transamerica," responded on Transamerica's behalf. Transamerica eventually mailed a letter to Smith's attorney that included the relevant forms for submitting a claim.

On December 7, 2021, Smith submitted her claim with the completed forms and supporting documentation. On December 24, 2021, Transamerica paid Smith's claim.

B

On June 5, 2023, Smith filed a putative class action lawsuit in the Southern District of Mississippi on behalf of herself and those similarly situated. She asserted claims for breach of contract, breach of the duty of good faith and fair dealing, bad faith, "negligence and/or gross negligence," breach of the duty to a third-party beneficiary, and declaratory judgment, against Transamerica, e-Serve, Penney OpCo, LLC (OpCo),[1] Tata Consultancy Services Ltd. (TCSL),[2] and Tata America International

---

[1] OpCo was created in October 2020, after JCPenney filed for bankruptcy, and purchased some of its assets, including six stores located in Mississippi. It has a registered agent for service of process in Mississippi.

[2] TCSL took over administration of Transamerica's policies around 2018.

No. 24-60115

Corporation (TAIC),[3] alleging that they had worked collectively to deny insureds' valid insurance claims or delay the claims process significantly.[4]

All defendants moved to dismiss Smith's complaint. OpCo and TAIC included sworn declarations with their motions; Smith did not provide a competing declaration or affidavit. The district court dismissed the claims against both OpCo and TAIC for a lack of personal jurisdiction, finding that Smith could not show a sufficient nexus between her claims and their contacts with the forum state. It dismissed all claims against the remaining defendants for failure to state a claim. Smith appeals both rulings.

II

We review *de novo* a district court's dismissal of defendants under Rule 12(b)(2) for a lack of personal jurisdiction. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012).[5] The plaintiff bears the burden of establishing jurisdiction, but this need not be done by a preponderance of the evidence; *prima facie* evidence of personal jurisdiction is sufficient when the district court ruled without an evidentiary hearing. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). We consider the entire contents of the record before the district court at the time of filing the motion to dismiss. *See Quick Techs., Inc. v. Sage Grp. PLC*, 313

---

[3] TAIC is a wholly owned subsidiary of TCSL. It is licensed to do business and has a registered agent for service of process in Mississippi.

[4] Although Aegon USA, LLC was initially named as a defendant, it was not named in the operative complaint. Smith also conceded at oral argument that she had not challenged the district court's dismissal of her claims against Aegon Direct Marketing Services or Aegon N.V. O.A. Rec. at 19:50–20:46. Accordingly, none of the Aegon entities are parties to this appeal.

[5] We address the jurisdictional dismissal first. *See Pervasive Software*, 688 F.3d at 231–32 (concluding personal jurisdiction is a threshold question that must be answered before reaching claims on the merits).

F.3d 338, 344 (5th Cir. 2002). We must accept as true the plaintiff's uncontroverted allegations and resolve all conflicts in its favor. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). But we do not "credit conclusory allegations, even if uncontroverted." *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)).

We also review *de novo* the dismissal of claims under Rule 12(b)(6) for failure to state a claim. *Warren v. Chesapeake Expl. L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014). In accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff, we must determine if the plaintiff has alleged enough to state a claim that is plausible on its face. *Carbon Six Barrels, L.L.C. v. Proof Rsch., Inc.*, 83 F.4th 320, 324 (5th Cir. 2023).

## III

Smith challenges the dismissal of her claims against OpCo and TAIC for lack of jurisdiction, arguing that the district court relied too heavily on her failure to provide an affidavit or declaration in response to the defendants' sworn declarations. She claims that the defendants' sworn declarations were "largely inapposite to the issues [she] presented," so her uncontradicted allegations were sufficient to establish personal jurisdiction. We disagree.

A court can exercise specific personal jurisdiction when a "defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). This determination is made using a three-prong test to consider whether (1) the defendant has formed minimum contracts with its forum state by purposefully directing its activities toward the forum state or purposefully availing itself of the privileges of the state; (2) the cause of

No. 24-60115

action arises out of or results from the defendant's forum-related contracts; and (3) the exercise of personal jurisdiction is fair and reasonable. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). If a defendant provides an affidavit or declaration setting forth facts that are only disputed by the plaintiff's barebone allegations, the defendant's facts are taken as true. *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024) (citing *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977)).

A

Smith's complaint alleges that OpCo is an entity doing business as JCPenney, formerly known as "JC Penney, Inc." She argues that because it "began operating as JC Penney in 2020," it was OpCo that solicited purchase of the policy, received her premiums, and caused her certificate number to be incorrectly shown as her policy number on her monthly statements.

A sworn declaration from OpCo's secretary, Dawn Wolverton, states that OpCo was formed after Smith purchased her policy to purchase certain assets from the bankrupt estate of JCPenney, and that it is neither the entity formerly known as "JC Penney, Inc." nor a successor to JCPenney or any of its subsidiaries. Wolverton's declaration also states that OpCo is not an insurance company and has never sold insurance policies in Mississippi and that it had zero involvement in the resolution of Smith's claim with Transamerica.

Accepting as true the facts set forth in Wolverton's unrefuted sworn declaration, *Pace*, 93 F.4th at 894, OpCo's only remaining ties to Mississippi are its (1) registered agent for service of process in Mississippi and (2) operation of six JCPenney locations in Mississippi. Smith's claims do not arise out of or result from either of these ties, however. There is no sufficient

6

No. 24-60115

link between Smith's claims and OpCo's contacts with Mississippi. *See Carmona*, 924 F.3d at 193.

B

Likewise, Smith alleges that the district court has specific personal jurisdiction over TAIC because it is involved with the administration of Transamerica's claims in the United States. A sworn declaration by TAIC's corporate counsel, Katelyn Cooper, states that TAIC is not a third-party administrator of insurance policies, has never sold or adjusted an insurance policy, and was not involved with the resolution of Smith's claim.

Accepting Cooper's unrefuted sworn declaration, *Pace*, 93 F.4th at 894, TAIC's only remaining ties to Mississippi are that it (1) is licensed to do business in Mississippi and (2) has a registered agent for service of process in Mississippi. These are insufficient to support a finding of specific personal jurisdiction. *See Carmona*, 924 F.3d at 193.[6]

The district court did not err in dismissing the claims against OpCo and TAIC for a lack of personal jurisdiction.[7]

---

[6] Smith alleges that TAIC's computer software could not recognize her policy information despite Smith providing incorrect information. She did not allege this below, so we decline to consider it here. *See Quick Techs.*, 313 F.3d at 344.

[7] Smith waived her argument that both defendants are "in the business of insurance" and therefore, under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015, and Mississippi state statutes, the court has both general and specific jurisdiction over them. She did not sufficiently raise it below and "the district court did not appear to detect it in what [she] did offer." *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 549 (5th Cir. 2016). Smith also did not identify any valid "special circumstances" that warrant resolution of the issue here. *See PHH Mortg. Corp. v. Old Republic Nat'l Title Ins.*, 80 F.4th 555, 563 (5th Cir. 2023).

IV

Smith also contends that the district court erred by dismissing her claims against the remaining defendants for failure to state a claim.

A

A plausible claim for a breach of contract action under Mississippi law requires "(1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 497 (5th Cir. 2019). To succeed on the first element, the contract must be between the parties of the lawsuit. *See Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 418–19 (Miss. 2018); *see also Kennedy v. Claiborne Cnty. ex rel. Bd. of Supervisors*, 233 So. 3d 825, 831 (Miss. Ct. App. 2017) ("Because there was no valid and enforceable contract *between the parties*, there was no breach of contract by Claiborne County." (emphasis added)).

Regarding Smith's breach of contract claims against TCSL and e-Serve, she has not alleged or identified a contract between her and each of them. Without a contract, there is no breach of contract action against either defendant. *Maness*, 250 So. 3d at 418–19.

As for Transamerica, Smith alleges that she provided it with the written notice required by the contract by writing to its claims department and division counsel in Iowa, but Transamerica failed to timely pay her claim. The contract requires the written notice be sent to Plano, Texas, however. Even taking her allegations as true, it is evident from the face of her complaint that Smith complied with the contractual notice requirement when her attorney sent her official paperwork to Plano on December 7, 2021. Because Transamerica paid the claim on December 24, 2021, the district court did not err when it dismissed Smith's breach of contract claim against Transamerica.

No. 24-60115

B

In Mississippi, all insurance contracts carry an implied covenant of good faith and fair dealing. *See Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 269 (Miss. 1999) (citing *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992)); *Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d 255, 281 (Miss. 1988) (PRATHER, J., dissenting). A breach of this covenant requires some conduct that violates the standards of decency, fairness, or reasonableness. *Baymon*, 732 So. 2d at 269. This may exist even if there is no breach of an express provision of the relevant contract. *Jones v. Miss. Insts. of Higher Learning*, 264 So. 3d 9, 22 (Miss. Ct. App. 2018); *see also Crosby Mem'l Hosp. v. Abdallah*, 48 F. App'x 102, 2002 WL 31016466, at *13 n.9 (5th Cir. 2002) (unpublished). If the party's actions are "authorized by contract," however, there can be no breach of the implied covenant of good faith and fair dealing. *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 744 (Miss. 2019).

Smith argues that Transamerica and the other defendants breached their duty of good faith and fair dealing in handling her claim because they did not "take affirmative steps to cooperate in investigating and resolving her claim." Neither TCSL nor e-Serve owed Smith a duty of good faith and fair dealing, as they were not parties to the insurance contract. *Gulf Coast Hospice*, 273 So. 3d at 744 (holding a breach of an implied covenant requires an existing contract). Further, Smith failed to identify any misconduct by Transamerica that would constitute a breach. It timely paid Smith what she was owed after it was properly notified of her claim.

We find no error in the dismissal of this claim.

C

To prevail on a bad faith breach of contract claim, the insured must generally show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence

9

in disregard of the insured's rights. *U.S. Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992).

Like her breach of contract claims against TCSL and e-Serve, Smith's bad faith claims against them also fail because she has not alleged or identified a contract with either party. *See Maness*, 250 So. 3d at 418–19 (concluding that courts may not "maintain a contract action" without privity of contract).

As for Transamerica, Smith's complaint alleges that it "effectively denied" her claim. Mississippi courts have allowed an insured to recover when a claim is "merely delayed rather than ultimately denied," however. *James v. State Farm Mut. Auto Ins.*, 743 F.3d 65, 69 (5th Cir. 2014). In those cases, the plaintiff must establish (1) the defendant had a contractual obligation to her; (2) the defendant lacked an arguable or legitimate basis for its delay in paying her claim; and (3) the defendant's failure resulted "from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *See id.* at 70 (citing Jeffrey Jackson, *Miss. Ins. Law and Prac.* § 13:2 (2012)). Whether an insurer possessed an arguable or legitimate reason is a question of law. *Id.*

As discussed, Transamerica's obligation to pay was not triggered until December 7, 2021, when Smith provided notice of her claim in accordance with the contract. She has not alleged facts sufficient to establish that Transamerica lacked an arguable or legitimate basis for its "delay." The district court did not err in dismissing this claim.

D

Smith argues that she has asserted a valid third-party beneficiary breach of duty claim under Mississippi law because, as an insured of Transamerica, she is a direct beneficiary of a contract relating to e-Serve's administration of Transamerica's claims. She contends that because e-Serve

No. 24-60115

admitted to the Mississippi Insurance Department that it is Transamerica's third-party administrator, the companies must have some contractual agreement regarding "the administration of Transamerica's U.S. insurance," and that agreement must have been breached here. We disagree.

Under Mississippi law, a third-party beneficiary is entitled to bring suit to enforce a promise made for its benefit. *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1145 (Miss. 2004). This right must "spring" from the terms of a contract. *Id.*

Smith has not pleaded sufficient facts to plausibly allege that there was "a promise made for [her] benefit" or that the "alleged broken condition was placed in the contract for [her] direct benefit." *Rein*, 865 So. 2d at 1145. We find no error.[8]

E

Smith has not stated a valid claim that entitles her to any relief.[9] Because a court may only grant declaratory judgment in favor of the plaintiff when there is an underlying claim, the district court did not err in denying declaratory judgment. *See Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).

---

[8] Citing *Bass v. California Life Insurance Company*, 581 So. 2d 1087 (Miss. 1991), Smith argues that a third-party administrator could incur liability for its misconduct. We have previously noted that *Bass* has not been "applied outside the contract of bad-faith denial of claims," however. *Gray ex rel. Rudd v. Beverly Enterprises-Miss., Inc.*, 390 F.3d 400, 406 (5th Cir. 2004).

[9] By not addressing them on appeal, Smith has abandoned her claims of "negligence and/or gross negligence." *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

No. 24-60115

\*   \*   \*

The district court's judgment is AFFIRMED.